# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

CLINT SMALL, ADAM LEE,
MICHELE HECK, JASON HOPKINS,
DERRICK POMRANKY, AMBER
GAMBOA, JONATHON FLANDERS,
NICHOLAS PALMER, AND TRACY
MERTZ,

      Plaintiffs,

v.

JAMES MCCRYSTAL, TODD
TROBAUGH, AND WOODBURY
COUNTY, IOWA,

      Defendants.

**No. 10-CV-04088-DEO**

**MEMORANDUM AND OPINION ORDER**

_____

## TABLE OF CONTENTS

I.  INTRODUCTION AND BACKGROUND . . . . . . . . . . . . 3

II. FACTS . . . . . . . . . . . . . . . . . . . . . . . 3

III. PLAINTIFFS' CLAIMS AND DEFENDANTS' ARGUMENTS . . . . 11

IV. SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . 16

V.  QUALIFIED IMMUNITY . . . . . . . . . . . . . . . . 17
    A.  Whether Defendant McCrystal is Entitled to Qualified
        Immunity in Relation to Plaintiff Small's Wrongful
        Arrest Claim . . . . . . . . . . . . . . . . . . 19
    B.  Whether Defendant McCrystal and Trobaugh are
        Entitled to Qualified Immunity in Relation to
        Plaintiffs', Other than Clint Small's, Unlawful
        Arrest Claims . . . . . . . . . . . . . . . . . . 26
    C.  Whether Defendant McCrystal is Entitled to Qualified
        Immunity in Relation to Plaintiff Small's Excessive
        Force Claim . . . . . . . . . . . . . . . . . . . 28

VI.   INTERVENING AND SUPERSEDING CAUSES DEFENSE . . . . . 30
      A.   Plaintiffs', Other than Small's, 42 U.S.C. § 1983
           Causes of Action for False Arrest in Violation of
           the Fourth Amendment and all Plaintiffs' 42 U.S.C.
           § 1983 Causes of Action for Retaliatory Prosecution
           in Violation of the First Amendment . . . . . . 33
      B.   Plaintiffs' State Law Malicious Prosecution Claims
           . . . . . . . . . . . . . . . . . . . . . . . . 39

VII.  IOWA STATE LAW; ASSAULT AND BATTERY . . . . . . . . 41

VIII. IOWA STATE LAW: MALICIOUS PROSECUTION . . . . . . . 42

IX.   ABUSE OF PROCESS . . . . . . . . . . . . . . . . . . 44

X.    CIVIL CONSPIRACY . . . . . . . . . . . . . . . . . . 47
      A.   Whether Defendants Have Made a Showing of Conspiracy
           . . . . . . . . . . . . . . . . . . . . . . . . 48
      B.   Whether Plaintiffs have Sufficiently Shown an
           Underlying Constitutional Violation for Purposes of
           § 1983 or a Wrongful Act for Purposes of Common Law
           Conspiracy . . . . . . . . . . . . . . . . . . . 50
      C.   Whether There is a Common Law Conspiracy Claim in
           Iowa . . . . . . . . . . . . . . . . . . . . . . 52
      D.   Whether Defendant Trobaugh can be Held Responsible
           for Plaintiff Small's Claims . . . . . . . . . . 53
      E.   Whether Defendants McCrystal and Trobaugh are
           Entitled to Qualified Immunity . . . . . . . . . 55

XI.   DEFENDANT WOODBURY COUNTY'S ARGUMENT . . . . . . . . 56
      A.   § 1983 . . . . . . . . . . . . . . . . . . . . . 56
      B.   State Law Claims . . . . . . . . . . . . . . . . 58

XII.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . 58

Exhibit A . . . . . . . . . . . . . . . . . . . . . . . . 60

## I.   INTRODUCTION AND BACKGROUND

This matter is before the Court on James McCrystal's, Todd Trobaugh's, and Woodbury County, Iowa's (Defendants'), motions for summary judgment. Docket Nos. 19 and 21.

## II.  FACTS

On October 4, 2008, in Sloan, Iowa, a fund-raising event was held to raise money for the victim of a motorcycle accident, Justin Larmoureux. Docket No. 19-1, 1. The "event included an all-day golf outing followed by an auction, dinner and live music" and was intended to raise money for Mr. Larmoureux. <u>Id.</u> Late into the evening of the fund-raiser, Doug Winters, a volunteer at the event, was injured attempting to break up a fight. <u>Id.</u> Subsequently, Mr. Winters placed two 911 calls. <u>Id.</u> Beyond these basic facts, the parties agree on few others.

Deputy McCrystal, of the Woodbury County Sheriff's Office, claims he went to the Sloan Golf Course in response to a communication from dispatch that there was a "'large fight.'" Docket No. 19-1, 2. Deputy Trobaugh contends he was called to the scene due to "an assault on a peace officer." Docket No. 21-4, 1. Plaintiffs note that Deputy Trobaugh's

police report merely indicates a call for a "disturbance" and fails to mention an assault on a peace officer. Docket 27-3, 1. Plaintiffs also note that the only other officer on the scene at the time Deputy Trobaugh and McCrystal arrived on the scene, Officer LaPrath of the Sloan Police Department, did not call for assistance. <u>Id.</u>

Deputy McCrystal claims that when he arrived at the Sloan Golf Course at approximately 1:30 a.m., there were still 150 to 200 people in the parking lot, some ongoing fights, and Officer LaPrath struggling to get a man in handcuffs into his squad car. Docket No. 19-1. At the trial of Clint Small, Deputy Trobaugh denied that there was any physical fighting going on. Docket No. 27-1, 10 (quoting Small Trial Tr. pg. 47; App. 53). Plaintiffs note that, in related criminal proceedings, multiple witnesses testified: that there were at most 50 people in the parking lot; there had only been a single altercation in the evening; and there were no ongoing fights when Deputies McCrystal and Trobaugh arrived. Docket No. 27-3, 1.

Deputy McCrystal went into the club house bar while Deputy Trobaugh stayed outside to, according to Deputy McCrystal, break up a fight. Docket No. 19-1, 2. Deputy

4

Trobaugh merely claims to have stayed outside to direct people to leave the scene. Docket No. 21-4, 2. Once in the bar, Deputy McCrystal claims he told the bar tender to close the bar, whereupon Plaintiff Small, who, according to Deputy McCrystal, was drinking directly from a bottle of alcohol, began screaming at him "that he was a 'fucking asshole.'" Docket No. 19-1, 3 and Docket No. 27-1, 7. According to Deputy McCrystal, two females then pushed Plaintiff Small out of the building as he screamed "'Fuck you. Fuck Woodbury County.'"[1] Id. Plaintiffs note witness' testimony in related criminal proceedings indicates a very different version of events than that presented by Deputy McCrystal. Docket No. 27-3, 2. For instance, Lori Wendt testified that she was with Plaintiff Small when Deputy McCrystal came into the club house, that Plaintiff Small was holding a beer rather than a

---

[1] At the criminal trial of Plaintiff Small, Deputy McCrystal elaborated upon what transpired within the club house: "McCrystal testified that after (continued next page) he turned around to leave, he saw Small and his companion still standing there and drinking, so he told them again to leave, and at that point Small allegedly 'rushed up into my face (and said) fuck you. Fuck you. And I'm like you need to leave, okay? You need to leave or you're going to go to jail. Fuck you. Fuck you. Fuck you. You're a fucking asshole. All of you guys are fucking assholes. I'm like, You need to leave or you're going to jail, okay. And I just continued on.'" Docket No. 27-1, 7 (quoting Small Trial Tr. p. 30; App. 49).

liquor bottle, and that no words were exchanged between Deputy McCrystal and Plaintiff Small within the club house.  Docket No. 27-1, 19 (citing Small Trial Tr. 158-89; App. 81).

Once outside the building, Deputies Trobaugh and McCrystal claim Plaintiff Small continued to yell profanities. Docket No. 19-1, 3 and 21-4, 2.  Specifically, Deputy McCrystal claims Plaintiff Small continued to scream "'fuck Woodbury County, fuck the deputies, these guys are nothing but a bunch of fucking assholes.'"[2]  Docket No. 19-1, 3. Plaintiff again notes that several witnesses have indicated Plaintiff Small, if he said anything, made a single comment about the Sheriff's Office and did not repeatedly scream profanities.  Docket No. 27-3, 2.

Both Deputy McCrystal and Trobaugh claim they repeatedly asked Plaintiff Small to leave, and, eventually, Deputy McCrystal placed him under arrest.  Docket No. 19-1, 3 and 21-4, 2.  According to Deputy McCrystal, he informed Plaintiff Small he was under arrest, and, while effectuating the arrest,

_____

[2] At the criminal trial of Clint Small, Deputy McCrystal testified that Plaintiff Small had "'both hands above his head, middle fingers raised, and he [was] screaming, Fuck these guys.  Fuck Woodbury County.  (continued next page) Come on everybody.  Fuck these guys.  They're nothing but fucking assholes.  Fuck these guys.'"  Docket No. 27-1, 8 (quoting Small Trial Tr. pg. 32-33; App. 49-50).

6

Plaintiff Small attempted to pull away, at which time Deputy McCrystal executed a take-down. Docket No. 19-1, 3. Both parties agree Plaintiff Small hit his head and was injured. Once on the ground, Deputy McCrystal claims Plaintiff Small resisted, several individuals jumped on his "back, yelling for him to get off," and Deputy Trobaugh intervened by pushing them away. Docket No. 19-1, 3. Deputy Trobaugh merely claims that, once Deputy McCrystal and Plaintiff Small were on the ground, "[s]everal people in the vicinity began to converge on the scene, shouting at the deputies that their actions were unwarranted," and he "attempted to assist Deputy McCrystal by instructing these individuals to step away from" Plaintiff Small.[3] Docket No. 21-4, 2.

The Plaintiffs' version of events surrounding the take down and arrest of Plaintiff Small are markedly different. They note that multiple witnesses in the related criminal proceedings "testified that [Deputy] McCrystal did not inform [Plaintiff] Small he was . . . under arrest," Deputy McCrystal

---

[3] At the criminal trial of Clint Small, Deputy Trobaugh's testimony was somewhat different; he testified that Michele Heck had grabbed Deputy McCrystal and was trying to pull Deputy McCrystal off Clint Small, and so Deputy Trobaugh "'went and pushed her away from [Deputy McCrystal] and then we had a whole bunch of people come after us . . . trying to . . . grab us and push us away from Clinton Small.'" Docket No. 27-1, 12 (quoting Small Trial Tr. pg. 54; App. 55).

"tackled" Plaintiff Small "from behind without warning,"
Plaintiff Small "did not resist once he was on the ground, and
no one touched the [D]eputies." Docket No. 27-3, 2.

Deputy McCrystal claims that once Plaintiff Small was
handcuffed, he and Deputy Trobaugh were essentially pinned
against the wall of the club house by an angry crowd who
persisted in screaming at them. Docket No. 19-1, 3. Both
Deputy Trobough and McCrystal claim that several individuals,
including Plaintiffs in the instant action, continued to
interfere with the Deputies' attempts to disperse the crowd.
Docket No. 21-4, 2 and Docket No. 19-1, 3-4. Though each
Plaintiff admits to varying degrees of interaction with
Deputies McCrystal and Trobaugh after the arrest of Clint
Small, Plaintiffs note that Officer LaPrath has indicated
"that no one was yelling or screaming" at the Defendants and
"no threats were made." Multiple other witnesses testified
"that the crowd was not antagonistic." Docket No. 27-3, 2 and
Docket No. 27-2, 2. For instance, Jill Black, a United States
Probation Officer, testified that people were simply asking
the Deputies why they did what they did, and the Deputies were
not in danger. Docket 27-1, 51 (citing Heck Trial Tr. 194-96;
App. 437-39). Eventually, Plaintiff Small was taken away in

8

an ambulance and the remainder of the crowd dispersed.  Docket No. 21-4, 3.

At 2:50 a.m. the following morning, October 6, 2008 (25 and ½ hours after the event in question), Deputy McCrystal dictated his report on the incident.  Docket No. 21-4, 3. Deputy Trobaugh did so at 6:05 a.m. on October 6, 2008.  <u>Id.</u> Also on October 6, 2008, Deputy McCrystal submitted a Warrant Routing Sheet to the Woodbury County Attorney's Office for a finding of probable cause to file charges for Disorderly Conduct, Failure to Disperse, and Unlawful Assembly against Plaintiff Clint Small.  <u>Id.</u>

Plaintiff Jason Hopkins, who was at the benefit on the night in question, testified in a deposition that around a week after the incident in question, Deputies McCrystal and Trobaugh came to his work place and threatened to file charges against him and "'put warrants out for everybody at the benefit.'"  Docket No. 27-1, 59 (quoting Hopkins' Deposition Pg. 22-23; App. 604).  They then asked him where his band would be playing in the future and warned that "'they may . . . show up and just haul everybody to jail.'"  <u>Id.</u>

9

On October 14, 2008, Deputy McCrystal submitted eight Warrant Routing Sheets to the Woodbury County Attorney's Office requesting a probable cause determination for various charges to be filed against Jonathon Flanders, Michele Heck, Derrick Pomranky, Amber Gamboa, Tracy Mertz, Nicholas Palmer, Adam Lee, and Paula Bainbridge.[4]

On October 17, 2008, Deputy Trobaugh prepared a second report which included additional allegations against Plaintiffs.[5] Docket No. 33, 2 and Docket No. 27-1, 2. Within his subsequent report, Deputy Trobaugh indicated he was actively requesting the County Attorney to review his report for purposes of issuing warrants. Docket No. 33, 2. On October 20, 2008, Deputy McCrystal also filed a supplemental report which included additional allegations against Plaintiffs and specifically identified the charges he felt they should face. Docket No. 27-1 and Docket No. 21-1, 32-35. On October 20 and 22, 2008, the Deputies' reports were

---

[4] See Attached Exhibit A.

[5] On October 31, 2008, Deputy Trobaugh submitted yet another supplemental report. Docket No. 27-1, 2. However, it appears that this report, because it (continued on next page) post-dated the County Attorney's issuance of arrest warrants, did not impact the decision to bring charges against Plaintiffs.

provided to the County Attorney. Docket No. 21-4, 3. From October 30, 2008, to November 17, 2008, two separate County Attorneys filed complaints and affidavits or trial informations and minutes of expected testimony with four separate Judges, charging Plaintiffs with a variety of offenses.[6] Docket No. 21-4, 3-6. Each Judge then made separate findings of probable cause for the charges against each Defendant. Id.

All the Plaintiffs were eventually acquitted of the charges through either dismissals for lack of evidence or not guilty findings. Docket No. 27-1, 58.

### III.     PLAINTIFFS' CLAIMS AND DEFENDANTS' ARGUMENTS

On October 1, 2010, Clint Small, Adam Lee, Michele Heck, Jason Hopkins, Derrick Pomranky, Amber Gamboa, Jon Flanders, Nicholas Palmer, and Tracy Mertz (Plaintiffs), all individuals who faced criminal charges stemming from the night in question, filed an amended complaint alleging numerous causes of action against Defendants. Docket No. 3. Though Plaintiffs' complaint does not precisely delineate the causes of action alleged, after careful consideration, this Court has identified the following causes of action contained therein:

---

[6] See attached Exhibit A.

**(1)** 42 U.S.C. § 1983[7] claim alleging Defendant McCrystal's actions constituted excessive use of force against Plaintiff Clint Small in violation of the Fourth Amendment;[8]

**(2)** 42 U.S.C. § 1983 claim alleging Defendant McCrystal's arrest of Plaintiff Clint Small was an illegal seizure in violation of the Fourth Amendment;[9]

**(3)** 42 U.S.C. § 1983 claim alleging Defendants McCrystal and Trobaugh's actions constituted an unlawful arrest of Plaintiffs, not including Clint Small, in violation of the Fourth Amendment;

**(4)** 42 U.S.C. § 1983 claim alleging Defendants McCrystal

---

[7] 42 U.S.C. § 1983 provides: "Every person who, under color of any statute ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

[8] Though the Fourth Amendment, by its terms, applies only to the Federal Government, both parties impliedly concede that it is made applicable to state actors, such as Defendants, through the Fourteenth Amendment. Throughout the remainder of this Memorandum and Opinion Order, this Court simply refers to violations of the Fourth Amendment, rather than violations of the Fourth Amendment as made (continued on next page) applicable through the Fourteenth.

[9] Throughout this Memorandum and Opinion Order, this claim is routinely referred to as an unlawful arrest claim.

and Trobaugh's actions constituted a retaliatory inducement to prosecute Plaintiffs in violation of the First Amendment;[10]

**(5)** 42 U.S.C. § 1983 claim alleging Defendants' actions constituted a civil conspiracy in violation of Plaintiffs' First and Fourth Amendment Rights;

**(6)** 42 U.S.C. § 1983 claim alleging Defendant Woodbury County is liable for Defendants McCrystal and Trobaugh's unconstitutional actions for failing to properly train and supervise their employees;

**(7)** state law claim alleging Defendant McCrystal and Trobaugh's actions, for which Woodbury County is also vicariously liable, constituted assault and battery of Plaintiff Small;

**(8)** state law claim alleging Defendant McCrystal's actions, for which Woodbury County is also vicariously liable, constituted malicious prosecution of Plaintiffs;

**(9)** state law claim alleging Defendant McCrystal and Trobaugh's actions, for which Woodbury County is also

---

[10] Though the First Amendment, by its terms, applies only to the Federal Government, both parties impliedly concede that it is made applicable to state actors, such as Defendants, through the Fourteenth Amendment. Throughout the remainder of this Memorandum and Opinion Order, this Court simply refers to violations of the First Amendment, rather than violations of the First Amendment as made applicable through the Fourteenth.

vicariously liable, constituted abuse of process against Plaintiffs;

**(10)** state law claim alleging Defendant McCrystal and Trobaugh's actions, for which Woodbury County is also vicariously liable, constituted a civil conspiracy to commit assault and battery, malicious prosecution, and abuse of process against Plaintiffs.

The Defendants' various arguments in their motions for summary judgment are not always clear as to which causes of action they apply; this, considering the number of Plaintiffs and Defendants and the complexity of the events at issue, is problematic. For purposes of organization, this Court has identified the following distinct arguments, each affecting the following distinct causes of action:

**(1)** motion for summary judgment against Plaintiffs' 42 U.S.C. § 1983 causes of action based on qualified immunity;

**(2)** motion for summary judgment against Plaintiffs', not including Clint Small's, 42 U.S.C. § 1983 causes of action for unlawful arrest in violation of the Fourth Amendment, all of Plaintiffs' 42 U.S.C. § 1983 retaliatory inducement to prosecute causes of action in violation of the First Amendment, and all of Plaintiffs' state law claims due to

intervening and superseding causes of Plaintiffs' harms;

**(3)** motion for summary judgment against Plaintiff Small's assault and battery claim based on a lawful arrest exception;

**(4)** motion for summary judgment against Plaintiffs' malicious prosecution claims for failure to establish actual malice;

**(5)** motion for summary judgment against Plaintiffs' abuse of process claims for failure to establish the actual use of a process;

**(6)** motion for summary judgment against Plaintiffs' 42 U.S.C. § 1983 and state law conspiracy causes of action for failure to establish an actual conspiracy and failure to establish an underlying constitutional violation and/or wrongful act

**(7)** motion for summary judgment against Plaintiffs' state law conspiracy cause of action because there is no such thing as state law civil conspiracy; and

**(8)** motion for summary judgment against all of Plaintiffs' claims against Woodbury County for failure to allege inadequate training in relation to the 42 U.S.C. § 1983 claims, and a lack of underlying liability sufficient for

municipal liability to attach in relation to the state law claims.

The remainder of this Memorandum and Opinion Order discusses each of Defendants' distinct arguments.

### IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if the record shows "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P., Rule 56(c). A fact is *material* if it is necessary "to establish the existence of an element essential to [a] party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). There is a *genuine issue* as to a material fact if, based on the record before the court, a "rational trier of fact" could find for the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When considering a motion for summary judgment, a "court must view the evidence in the light most favorable to the nonmoving party . . . ." Hutson v. McDonnel Douglas Corp., 63 F.3d 771 (8th Cir. 1995). This requires a court to draw any reasonable inference from the underlying facts in favor of the

nonmoving party and to refrain from weighing the evidence, making credibility determinations, or attempting to discern the truth of any factual issue in a manner which favors the moving party unless there is no reasonable alternative. See Matsushita, 475 U.S. at 587; and Morris v. City of Chillicothe, 512 F.3d 1013, 1018 (8th Cir. 2008) (citing Thomas v. Corwin, 483 F.3d 516, 526-27 (8th Cir. 2007).

Procedurally, the movant bears the initial burden "of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992) (citing Celotex, 477 U.S. at 323). Once the movant has carried his burden, the non-moving party is required "to go beyond the pleadings" and through "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 423 (citing Fed. R. Civ. P. 56(e)).

## V.  QUALIFIED IMMUNITY[11]

---

[11] Defendant McCrystal argues he is entitled to summary judgment under the doctrine of qualified immunity in relation to Plaintiff Small's § 1983 excessive force and unlawful arrest claims; and both Defendants McCrystal and Trobaugh imply they are entitled to summary judgment in relation to all

17

The Supreme Court has established a two step sequential evaluation process to resolve questions of qualified immunity.[12]  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  The "'threshold question'" is whether the facts, taken in a "'light most favorable to the party asserting the injury,'" demonstrate "'the officer's conduct violated a constitutional right'" of the Plaintiff.  <u>Scott v. Harris</u>, 550 U.S. 372, 377 (2007) (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)).  If there is a "violation of constitutional right, 'the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case.'"  <u>Id.</u>

The first question in the sequential evaluation process is straight forward and merely asks if there is a constitutional violation under prevailing law.  The second

of the Plaintiffs' § 1983 claims.  Docket No. 19-3, 8-15 and Docket No. 21-3, 3-7.

The question of whether Defendants are entitled to qualified immunity in relation to Plaintiffs' § 1983 civil conspiracy claim, though Defendants' qualified immunity argument was never explicitly related to civil conspiracy in Defendants' briefs, is dealt with in Section VII of this Memorandum and Opinion Order.

[12]  More recently, in <u>Pearson v. Callahan</u>, the Supreme Court ruled that the sequential evaluation process outlined in <u>Saucier</u> was not mandatory; lower courts retain discretion whether to follow the <u>Saucier</u> procedure.  555 U.S. 223, 236 (2009).

question in the sequential evaluation process requires that the "contours of the right . . . be sufficiently clear" such "that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Id. While the first and second steps are quite similar, the second step adds an additional dimension in that "reasonable mistakes can be made as to the legal constraints on particular police conduct," regardless of whether or not there was an actual constitutional violation. Id. 205.

**A. Whether Defendant McCrystal is Entitled to Qualified Immunity in Relation to Plaintiff Small's Wrongful Arrest Claim**

The Fourth Amendment protects against unreasonable seizures. U.S. Const. amend. IV. An "arrest is a seizure" under the Fourth Amendment. Robbins v. California, 453 U.S. 420, 451 (1981). It is undisputed that Deputy McCrystal's take-down and subsequent restraint of Plaintiff Small constituted a warrantless arrest. An arrest by a law officer without a warrant "is reasonable under the Fourth Amendment

where there is probable cause to believe that a criminal offense has been or is being committed." <u>Devenpeck v. Alford</u>, 543 U.S. 146, 153 (2004) (citing <u>United States v. Watson</u>, 423 U.S. 411, 417-424 (1976) (other citation omitted).

A probable cause determination "is a 'practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable prudent men, not legal technicians, act.'" <u>Maryland v. Pringle</u>, 540 U.S. 366, 370 (2003) (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 231 (1983)) (internal quotations omitted). In other words, probable cause is "'a fluid concept-turning on the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules.'" <u>Id.</u> at 370-71 (quoting <u>Gates</u>, 462 U.S. at 232).

In determining "whether an officer had probable cause to arrest an individual," a court must "examine the events leading up to the arrest, and then decide whether the facts, 'viewed from the standpoint of an objectively reasonable . . . officer, amount to' probable cause." <u>Id.</u> at 372 (quoting <u>Ornelas v. United States</u>, 517 U.S. 590, 696 (1996).

Defendant McCrystal contends there was probable cause to arrest Plaintiff Small based on the following violations of Iowa State law:  failure to disperse, disorderly conduct, and interference with official acts.  Docket No. 19-3, 13-14.

Iowa Code § 723.3, failure to disperse, provides:

> A peace officer may order the participants
> in a riot or unlawful assembly or persons
> in  the  immediate  vicinity  of  a  riot  or
> unlawful assembly to disperse.  Any person
> within  hearing  distance  of  such  command,
> who  refuses  to  obey,  commits  a  simple
> misdemeanor.

Though Defendant McCrystal and Trobaugh claim there were 150 to 200 people, many of whom were fighting,[13] and they have generally  described  the  scene  as  chaos,  several  other witnesses have noted that:  there were no more than 50 people present, there had been only a single altercation all evening, and there was nothing unusual about the scene given the time of the Deputies' arrival and the nature of the fund-raising event.  Thus, there is a genuine issue as to whether or not the  events  surrounding  the  arrest  of  Plaintiff  Small constituted a riot or unlawful assembly.

Furthermore,  some  of  the  testimony  from  the  criminal

---

[13] As  previously  noted,  Deputy  McCrystal  implies  there were actual physical altercations ongoing, but Deputy Trobaugh denied this.  Docket No. 27-1, 10 (quoting Small Trial Tr. pg. 47; App. 53).

proceedings indicated Plaintiff Small was not repeatedly told to leave; and he was, in fact, on his way to his camper when tackled from behind by Deputy McCrystal. Therefore, there are genuine issues as to whether there actually was a viable command to disperse, and, assuming there was, whether Plaintiff Small failed to obey that command.

Iowa Code § 723.4 outlines seven situations constituting disorderly conduct. Defendant McCrystal contends Plaintiff Small violated the portion of the disorderly conduct statute which makes it a simple misdemeanor to make a "loud and raucous noise in the vicinity of any residence or public building which causes unreasonable distress to the occupants therein."

As previously noted, Deputy McCrystal claims Plaintiff Small, while in the club house, was yelling and screaming profanities at him. Both Deputy McCrystal and Trobaugh claim Plaintiff Small's allegedly obnoxious behavior continued much the same as he went out into the parking lot. However, other people have testified that Plaintiff Small said nothing to Deputy McCrystal while in the club house and made, at most, a limited comment while walking to his trailer in the parking lot. Therefore, there are genuine issues as to whether

Plaintiff Small made a loud and raucous noise, and, if so, whether it was sufficient to cause unreasonable distress in others.

A person violates Iowa Code § 719.1, interference with official acts, when they knowingly resist or obstruct "anyone known by the person to be a peace officer . . . in the performance of any act which is within the scope of the lawful duty or authority of that officer . . . ." As previously noted, some of the testimony indicates there was nothing improper or unusual about the gathering, and, therefore, Defendant McCrystal may not have had the lawful authority to order people to disperse in the first place. In addition, the terms "resist" and "obstruct" do not include "verbal harassment unless the verbal harassment is accompanied by a present ability and apparent intention to execute a verbal threat physically." Iowa Code § 719.1(3). Not even Deputy Trobaugh or McCrystal's version of events explicitly indicate Plaintiff Small had an apparent intention to physically execute his alleged verbal threats, and testimony from other witnesses indicate Plaintiff Small may not have even said

anything which could be reasonably construed as a verbal threat.

Overall, the available testimony related to the circumstances and events surrounding Defendant McCrystal's arrest of Plaintiff Small could lead a reasonable jury to conclude that Defendant McCrystal did not have probable cause to arrest Plaintiff Small and, therefore, violated Plaintiff Small's constitutional right to be free from an unreasonable seizure/arrest. However, as previously noted, a Plaintiff must also show that a Defendant's constitutional violation violated a clearly established right.

In determining whether a right allegedly violated was clearly established in the wrongful arrest context, the Eighth Circuit has indicated that the question becomes not whether there was "'probable cause in fact but <u>arguable probable cause</u> . . . that is, whether the officer should have known that the arrest violated plaintiff's clearly established right.'" <u>Copeland v. Locke</u>, 613 F.3d 875, 880 (8th Cir. 2010) (emphasis added) (quoting <u>Walker v. City of Pine Bluff</u>, 414 F.3d 989, 992 (8th Cir. 2005)). Thus, "'officers are entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that

the mistake is objectively reasonable.'" <u>Id.</u> (quoting <u>Baribeau v. City of Minneapolis</u>, 596 F.3d 465, 478 (8th Cir. 2010).

In the Eighth Circuit case <u>Copeland v. Locke</u>, the plaintiff cursed, pointed at the officer, and demanded the officer move his car, which was blocking his driveway, prior to being arrested. <u>Id.</u> The Court determined "[n]o reasonable police officer could believe that he had arguable probable cause to arrest an individual for such protected expressive conduct." <u>Id.</u> The testimony in this case, viewed in a light most favorable to Plaintiff Small, indicates Plaintiff Small's actions were even less abrasive than the actions of the Plaintiff in <u>Copeland</u>. Much of the witness testimony indicates Plaintiff Small, while walking away from Defendant McCrystal, merely disparaged the Woodbury County Sheriff's Office in a limited manner, and continued on his way to his camper. A reasonable jury, based on the varying evidence, could conclude that a reasonable person in Defendant McCrystal's situation would be well aware that an arrest would violate Plaintiff Small's constitutional rights; and, therefore, Defendant McCrystal is not entitled to qualified immunity.

**B. Whether Defendant McCrystal and Trobaugh are Entitled to Qualified Immunity in Relation to Plaintiffs', Other than Clint Small's, Unlawful Arrest Claims**

In Malley v. Briggs, the Supreme Court held that an "objective reasonableness" standard applies when determining whether the actions of "an officer whose request for a warrant allegedly caused an unconstitutional arrest" is accorded qualified immunity. 475 U.S. 335, 344 (1986).

As previously touched upon in Section II within this Memorandum and Opinion Order, Deputies McCrystal and Trobaugh's police reports, which no doubt played a role in Plaintiffs' subsequent arrests,[14] provide a rendition of events greatly at odds with the testimony of others who witnessed the events in question. For instance, Deputy McCrystal's initial report indicates there were between 175 to 200 people at the golf course when the Deputies arrived. Deputy Trobaugh's report indicates there were between 150 and 200 people with a "lot of yelling and fighting going on." Docket No. 27-5, 8 and 14. Deputy McCrystal's report further indicates that,

---

[14] Whether there is a sufficient causal connection between the issuance of the Deputies' reports and the subsequent arrest of Plaintiffs is dealt with in Section VI within this Memorandum and Opinion Order.

within the Club House, Plaintiff Small was pouring liquor in his mouth from a bottle that, because it still had the pouring apparatus attached, appeared to come directly from the bar. Id. Deputy McCrystal's report continues on to indicate that, after taking Plaintiff Small to the ground, two other Plaintiffs jumped on his back. Docket No. 27-5, 9. Deputy Trobaugh's report indicates that while Deputy McCrystal was attempting to secure Plaintiff Small, he and Deputy McCrystal "were basically rushed by 30 or 40 people coming up and screaming and hollering at us . . . ." Docket No. 27-5, 16. Both reports indicate that for 30 to 40 minutes after the incident with Plaintiff Small, the Deputies were unable to get people to disperse and were confronted with hostility and threats. Docket No. 27-5, 10 and 16. Deputy McCrystal even went so far as to describe the scene as a "riot." Docket No. 27-5, 10. As previously noted, other witnesses have indicated there were no more than 50 people at the scene when Deputies McCrystal and Trobaugh arrived; there were no ongoing fights and had only been one fight that evening; Plaintiff Small was not drinking directly from a liquor bottle; no one jumped on Deputy McCrystal's back when he was handcuffing Plaintiff Small; and the scene after the arrest was not antagonistic,

rather, and at worst, Plaintiffs and others were expressing an appropriate amount of concern and dissatisfaction with what they perceived as Deputy McCrystal's excessive use of force against Plaintiff Small.

Ultimately, given the record before this Court, a reasonable jury could conclude that Deputies McCrystal and Trobaugh's version of events were a gross exaggeration, if not simply untrue; and an officer's alleged filing of a report which distorts or falsifies material issues which he knows will be determinative of whether or not those mentioned in the report will be subsequently arrested, can not be said to be objectively reasonable. Furthermore, reasonable officers in Defendants McCrystal and Trobaugh's circumstances would have known that false reports accompanied by requests for warrants would violate Plaintiffs' constitutional rights to be free from unlawful arrest. Therefore, Deputy McCrystal and Trobaugh are not entitled to qualified immunity.

**C. Whether Defendant McCrystal is Entitled to Qualified Immunity in Relation to Plaintiff Small's Excessive Force Claim**

When considering a Fourth Amendment excessive force claim, a court must again inquire into the "reasonableness" of

the force applied.  <u>Graham v. Connor</u>, 490 U.S. 386, 395-96 (1989).  This "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."  <u>Id.</u> at 396 (quoting <u>United States v. Place</u> 462 U.S. 696, 703 (1983)) (internal quotations and other citations omitted).  "[C]areful attention" must be given "to the facts and circumstances of each particular case."  <u>Id.</u>  The overall focus is on the "totality of the circumstances."  <u>Tennessee v. Garner</u>, 471 U.S. 1, 9 (1985).

The "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  <u>Graham</u>, 490 U.S. at 397.  Finally, when considering the reasonableness of the action in question, a court must consider that officers "are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving . . . ."  <u>Id.</u> at 396-97.

Because testimony of eye witnesses supports the inference that Defendant McCrystal's arrest of Plaintiff Small was unconstitutional, a reasonable jury could also conclude that Defendant McCrystal used excessive force.  Furthermore,

because the evidence supports the inference that an officer would have known he was violating Plaintiff Small's right not to be subject to an unlawful arrest, a reasonable jury could also conclude that a reasonable person in Defendant McCrystal's situation would have known that his actions constituted excessive force; and, therefore, Defendant McCrystal is not entitled to qualified immunity.

## VI. INTERVENING AND SUPERSEDING CAUSES DEFENSE[15]

[15]Defendant Trobaugh argues the prosecutor and the approving Judge's independent determinations to pursue charges and issue warrants against Plaintiffs were intervening and superseding causes of Plaintiffs' arrests and subsequent prosecutions. Docket Nos. 21-3, 7-11. Though Defendant Trobaugh does not specify all the Plaintiffs' claims to which his argument applies, if accepted by the Court, it could be the basis for summary judgment against Plaintiffs', other than Clint Small's, § 1983 claims for false arrest and all of Plaintiffs' retaliatory inducement to prosecute, malicious prosecution, and abuse of process state law claims. However, Defendant's argument neither applies to Plaintiff Small's § 1983 false arrest or excessive use of (continued on next page) force claims nor his state assault and battery claims; these events occurred in the morning in question and did not involve independent decisions made by prosecutors or judges. (Continued)

Defendant McCrystal only makes the intervening and superseding cause argument in relation to state law malicious prosecution; but, if Defendant Trobaugh's argument is successful, it may also preclude the same § 1983 and abuse of process claims as to Defendant McCrystal. Docket No. 19-3, 21.

Finally, though Defendant Woodbury County fails to make an argument specifically related to intervening and superseding causes, they correctly point out that "in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." McCoy v.

Traditionally, tort law has recognized a distinction between factual and legal (or proximate) causation. "Conduct is a factual cause of harm when the harm would not have occurred absent the conduct." Restatement (Third) of Torts § 26. For any given event, there can be a number of factual causes, i.e., things that were necessary for the result to come about. For instance, temperature, past precipitation, relative humidity, presence of dead plant material, and a lightning strike can all be the factual causes of a forest fire. A third party or natural act independent of a defendant's actions which is also a factual cause of a plaintiff's harm is called an intervening act. <u>See</u> Restatement (Third) of Torts § 34. An intervening act sufficient to transfer blame for the harm in question from a defendant to a third party or natural event is called an intervening and superseding act. Thus, though conduct of a third party or a natural event may also be a factual cause, the question remains as to whether that intervening act influenced the events in question sufficiently to transfer blame for the harm; if so, it is said that the defendant's

<u>City of Monticello</u>, 411 F.3d 920, 922 (8th Cir. 2005). Thus, if the actions and decisions of the judges and prosecutors involved constitute intervening and superseding causes, Woodbury County should be granted summary judgment.

actions are not the legal (or proximate) cause of the plaintiff's harm, and the defendant, therefore, is not liable.

In order to illustrate the distinction between factual and legal (or proximate cause), consider the following hypothetical:

> Mr. W told police that Mrs. X was guilty of crime Y. The police had never heard of Mrs. X, but, upon investigating, they determined she was a rotten person and fabricated evidence implicating her for crime Z. Ultimately, based on the fabricated information, Mrs. X was charged for crime Z. Mrs. X now seeks damages against Mr. W for malicious prosecution.

In this scenario, the conduct of Mr. W is a "factual cause" of Mrs. X's harm in that she would not have been charged for crime Z if police were not looking into his allegations related to crime Y. The police department's fabrication of evidence is also the "factual cause" of Mrs. X's harm in that she would not have been charged with crime Z absent the fabrication of evidence. Though it was a "factual cause," the conduct of Mr. W would not be considered the legal (or proximate) cause of Mrs. X's harm, because the fabricated evidence was sufficient to transfer the blame for Mrs. X's arrest from Mr. W to the police. In other words, the fabrication of evidence was an intervening and superseding

cause of Mrs. X's harm.  Unfortunately, real world cases are rarely as cut and dry as hypotheticals, and various jurisdictions employ various tests and standards for determining whether a defendant's conduct is the factual and legal (or proximate) cause of a plaintiff's harm.

**A.  Plaintiffs', Other than Small's, 42 U.S.C. § 1983 Causes of Action for False Arrest in Violation of the Fourth Amendment and all Plaintiffs' 42 U.S.C. § 1983 Causes of Action for Retaliatory Prosecution in Violation of the First Amendment**

In <u>Hartman v. Moore</u>, the Supreme Court considered the causal connection necessary between a police officer's actions and a subsequent prosecution in a retaliatory inducement to prosecute case.  <u>Hartman v. Moore</u>, 547 U.S. 250 (2006).[16]  The <u>Hartman</u> court ruled that in order to make the causal link between a police officer's actions and a plaintiff's harm of

---

[16] Though a retaliatory inducement to prosecute case deals with violations of the First Amendment, and the Plaintiffs also claim violations of the Fourth Amendment, the causal link between a police officer's actions and the  harm that lies at the base of a plaintiff's § 1983 claims for wrongful arrest and retaliatory inducement to prosecute are the same.  Thus, this Court is persuaded that <u>Hartman</u>, at least in terms of the standard for establishing the element of causality, is applicable to both First Amendment retaliatory inducement to prosecute cases and Fourth Amendment wrongful arrest cases.

being prosecuted, a plaintiff must show that an officer "induced" the actions of a prosecutor or judge that would not have taken action "without his urging." Hartman, 547 U.S. at 262. The Court also noted that there is a presumption that prosecutorial decision making is legitimate, and so there must be a connection between the actions of the complaining officer and the prosecutor and judge whose actions ultimately harmed the plaintiff. Id. at 263. This "connection . . . is the absence of probable cause" within an officer's police report or at the time of a warrantless arrest. As discussed in detail earlier in Sections V(A) and (B)[17] within this Memorandum and Opinion Order, the available testimony from related criminal proceedings is sufficient for a reasonable jury in the instant action to conclude that Defendants did not have probable cause to arrest Plaintiffs.

However, the Hartman decision implies that, regardless of a lack of probable cause or a defendant's clear intent to induce a wrongful action, a judge or prosecutor may still have their own, independent reasons for their actions which, as an intervening superseding cause, would break the causal chain. Id. at 265. Defendant Trobaugh points to several facts that

---

[17] Pgs. 19-28 herein.

he alleges break the causal chain between Defendants' actions and the ultimate harms imposed on the Plaintiffs: (1) the prosecutors prepared and filed personal affidavits to go along with the complaints they filed with the courts; (2) two different prosecutors filed different charges, "resulting in some individuals being charged with simple misdemeanors and others being charged with indictable offenses," suggesting they "were acting independently;" (3) "the time delay between the submission of the reports and the filing of the complaints indicates that" prosecutors were exercising their "own independent judgment in determining whether probable cause existed to file charges;" (4) four different judges or magistrates reviewed the complaints and affidavits and independently determined that probable cause existed; and (5) in relation to Plaintiffs Heck and Mertz, prosecutors filed trial informations and minute testimony, which constitute an additional break in the causal chain. Docket No. 21-3, 8-10.

The Complaints against Plaintiffs Clint Small, Amber Gamboa, Derrick Pomranky, Jonathon Flanders, Tracy Mertz, Nicholas Palmer, Adam Lee, Jason Hopkins, and Michele Heck, though they include an affidavit signed by Assistant Woodbury County Attorneys, appear to be derived from Plaintiff

35

McCrystal and Trobaugh's version of events.  Docket No. 21-1, 49, 54, 58, 62, 65-66, 73, 77, 81, and 84-85.  It is not an uncommon practice for County Attorneys to swear to information provided by another.  The affidavits in question invariably consist of situations taking place between Defendants and Plaintiffs, for which prosecutors were not present.  So, absent evidence indicating others provided information to prosecutors, it is reasonable to infer that the information the county attorneys swore to came from Defendants Trobaugh and McCrystal.  <u>Id.</u>

The fact that Plaintiffs were being charged with different offenses also appears to flow directly from Defendants Trobaugh and McCrystal's version of events.  <u>Id.</u> As previously noted, one of McCrystal's reports went so far as to identify the charges which should be brought against Plaintiffs.  The accusations Defendants McCrystal and Trobaugh made against the various Plaintiffs were different, and the various charges track those differences.

A time delay between the submission of reports and the filing of the complaints does not necessitate the inference that the Assistant County Attorneys were relying on information other than that provided by Defendants McCrystal

and Trobaugh, or using that time to reach an independent conclusion based on information they somehow divined in their own time. It is more likely that the delays were the result of normal administrative lag, a necessary evil with which this Court is familiar.

The fact that two different prosecutors filed charges, and four different judges reviewed the complaints and affidavits does not negate the overriding fact that the substantive charges within the complaints and affidavits appear to be derived from Defendant McCrystal and Trobaugh's version of events. Since the version of events represented in the complaints and affidavits, whether true or not, outlined the presence of probable cause, it is no surprise that two different prosecutors filed charges or that four different judges reached the same conclusion.

Finally, the informations filed against Plaintiffs Heck and Mertz show no sign of being derived from facts other than that provided by Defendants McCrystal and Trobough; they add nothing beyond the initial police reports and subsequent complaints. Docket No. 21-1, 69 and 88-89. Notably, the minutes of testimony only refer to testimony to be given by Defendants McCrystal and Trobaugh and nobody else. Docket No.

21-1, 69-71 and 88-89.

It is undisputed that the charges brought against Plaintiffs arose from events occurring at the Sloan Golf Course in the early morning hours of October 5, 2008. The prosecutors and judges who later became involved in Plaintiffs' criminal cases were not present that morning. Defendants neither contend that other officers or witnesses present that morning provided information to the prosecuting attorneys or judges, nor do they contend that the prosecuting attorneys or judges had private agendas which influenced their decisions. All they allege are normal administrative steps, which, if deemed intervening and superseding causes, would render a cause of action against an officer for allegedly falsifying probable cause an impossibility. It is a general maxim that "tort liability . . . makes a man responsible for the natural consequences of his actions." Based on Defendants McCrystal and Trobaugh's police reports and the lack of any compelling contrary evidence, it is highly reasonable to infer that Plaintiffs' arrests were the natural consequence of Defendant McCrystal and Trobaugh's actions. Monroe v. Pape, 365 U.S. 167, 187 (1961). Absent the Defendants establishing a viable, intervening and superseding cause, whether or not

Defendants filed false reports and provided false information to prosecutors remains a genuine issue of material fact, and summary judgment is not appropriate.

**B.    Plaintiffs' State Law Malicious Prosecution Claims**[18]

Under the base malicious prosecution rule, a defendant must be responsible for the "instigation or procurement" of a prosecution for there to be a cause of action.  <u>Reed v. Linn County</u>, 425 N.W.2d 684, 686 (Iowa App. 1988). (citing <u>Vander Linden v. Crews</u>, 231 N.W.2d 904, 905 (Iowa 1975). Unfortunately, this standard is not very informative about the level of instigation or procurement necessary for malicious prosecution to apply.

In <u>Spreitzer v. Hawkeye State Bank</u>, the Iowa Supreme Court ruled that "legal causation for intentional torts," such as malicious prosecution, "often reach a broader range of damages" than "in cases involving unintentional torts," such as actions sounding in negligence.  <u>Spreitzer v. Hawkeye State</u>

---

[18] Though Defendants' intervening and superseding cause argument could be used to preclude Plaintiffs' state law Abuse of Process claims, Defendants argument that they did not actually use a legal process, considered in Section VII of this Memorandum and Opinion Order, naturally encompasses questions of causality and so is omitted in this section.

_Bank_, 779 N.W.2d 726, 741 (Iowa 2009). However, "even a willful or intentional [tortfeasor] does not become an insurer of the safety of those whom he has wronged." _Id._ (quoting _Johnson v. Greer_, 477 F.2d 101, 106 (5th Cir. 1973). A "tortfeasor, is not liable to a person whom he intended to harm and who has been harmed, unless from the standpoint of a reasonable man, his act has in some degree increased the risk of that harm." _Id._ Thus, the default rule under Iowa intentional tort law is that conduct is the legal (or proximate) cause of a plaintiff's harm if it "'enhanced (at the time the defendant acted) the chances of the harm occurring.'" _Id._ (quoting _Zuchowicz v. United States_, 140 F.3d 381, 388, fn 7 (2d Cir. 1998).

As discussed in the proceeding Section VI(A), Defendant Trobaugh and McCrystal's police reports not only enhanced or increased the risk of Plaintiffs' arrests but, at this stage of the proceeding, appear to be the primary cause thereof. So, summary judgment of Plaintiffs' state law malicious prosecution claims based on Defendants' intervening and superseding cause argument is denied.

## VII.    IOWA STATE LAW; ASSAULT AND BATTERY[19]

Plaintiff Small alleges Defendant McCrystal and Trobaugh's actions amounted to assault and battery. Docket No. 3, 6-7. The Iowa Civil Jury Instructions define an assault as either:

> (1) an act intended to put another in fear of physical pain or injury; [or] (2) an act intended to put another in fear of physical contact which a reasonable person would deem insulting or offensive; and the victim reasonably believes that the act may be carried out immediately.

1900.2 (citing State v. Straub, 190 N.W. 869 (1921) and Restatement of Torts (Second), Sections 21, 31, and 32.

Iowa has adopted the Restatement (Second) of Torts for a definition of battery. Nelson v. Winnebago Industries, Inc., 619 N.W.2d 385, 388-89 (Iowa 2000). The Restatement (Second) of Torts § 13 provides:

> An actor is subject to liability to another for battery if
>
> (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

---

[19] Though Plaintiffs claim that both Defendants McCrystal and Trobaugh are liable for assault and battery, they only claim that liability attaches to Defendant Trobaugh as a conspirator. This argument is considered in Section VIII within this Memorandum and Opinion Order.

> (b) a harmful contact with the person of
> the other directly or indirectly results.

The parties agree that Defendant McCrystal's actions, absent a viable defense, constituted assault and battery; but Defendant McCrystal argues, he is entitled to the defense of justification. Docket Nos. 19-3, 20 and 21-3, 13. More specifically, Iowa Code § 804.8 provides,

> A peace officer, while making a lawful arrest, is justified in the use of any force which the peace officer reasonably believes to be necessary to effect the arrest or to defend any person from bodily harm while making the arrest.

As previously discussed in Sections V(A) and (C), the evidence, viewed in a light most favorable to Plaintiffs, suggests that Deputy McCrystal was not making a lawful arrest; and, even if he were, his actions constituted excessive force. Police action exceeding the limits of excessive force constitute assault and battery. Lawyer v. City of Council Bluffs, Iowa, 240 F. Supp. 2d 941, 955 (S.D. Iowa 2002). Thus, Defendant McCrystal's motion for summary judgment as to Plaintiff Small's assault and battery claim is denied.

## VIII.    IOWA STATE LAW: MALICIOUS PROSECUTION

Under Iowa law, the elements of malicious prosecution are:

> (1) a previous prosecution;
> (2) instigation or procurement thereof by defendant;
> (3) termination of the prosecution by an acquittal or discharge of plaintiff;
> (4) want of probable cause; and
> (5) malice in bringing the prosecution on the part of the defendant.

Reed v. Linn County, 425 N.W.2d 684, 686 (Iowa App. 1988). (citing Vander Linden v. Crews, 231 N.W.2d 904, 905 (Iowa 1975).

In claims against public officials, a plaintiff must make an additional showing of actual malice. Vander Linden, 231 N.W.2d at 906. Defendants argue they are entitled to summary judgment because there is no evidence they acted with actual malice. Docket Nos. 19-3, 21 and 21-3, 15.

Actual malice "cannot simply be inferred from a lack of probable cause, but must be the subject of an affirmative showing" that defendant's actions were "[p]rimarily inspired by ill-will, hatred or other wrongful motives." Vander Linden, 231 N.W.2d at 906. Plaintiffs pled that Defendants brought criminal charges against them in order to cover up Defendant McCrystal's assault and battery on and wrongful arrest of Plaintiff Small. Docket No. 3, 3. Given that a reasonable jury could infer that Plaintiff Small was falsely arrested through excessive force and Deputies McCrystal and Trobaugh falsified reports in relation to many of the alleged

events which ultimately resulted in the prosecution of all the Plaintiffs, a reasonable jury could also conclude that Deputies McCrystal and Trobaugh's actions constituted a cover-up. The act of instigating a criminal prosecution in order to quiet potential witnesses to an illegal act is no doubt a wrongful motive; and therefore, Defendants' motion for summary judgment on Plaintiffs' malicious prosecution claims are denied.

## IX. ABUSE OF PROCESS

Abuse of process is "'the use of legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it was not designed.'" <u>Fuller v. Local Union No. 106</u>, 567 N.W.2d 419, 421 (Iowa 1997) (quoting <u>Palmer Tandem Management Servs., Inc.</u>, 505 N.W.2d 813, 817 (Iowa 1993). There are three elements to an abuse of process claim: "(1) the use of a legal process; (2) its use in an improper or unauthorized manner; and (3) the plaintiff suffered damages as a result of the abuse." <u>Dobratz v. Krier</u>, 2011 WL 5867067, 3 (Iowa App. 2011).

Defendants claim they did not actually use a legal process because prosecutors, rather than Defendants, actually filed the charges against Plaintiffs. Docket Nos. 19-3, 22-23

and 21-3, 16. The Supreme Court of Iowa has ruled that a "mere report to police of possible criminal activity does not constitute legal process." _Fuller_, 567 N.W.2d at 421. However, this begs the question of what constitutes a "mere report." There is some case law indicating that a false report is not a "mere report." In _Lyons v. Midwest Glazing, L.L.C._, the Honorable Judge Mark W. Bennett of the Northern District of Iowa, ruled that an allegedly false report from a private citizen that instigated the issuance of a search warrant was sufficient to sustain an abuse of process claim. 235 F. Supp. 2d 1030, 1040-42. In addition, the Iowa Supreme Court, though they sustained a directed verdict against Plaintiff on unrelated grounds, considered an abuse of process claim against a private citizen who initiated debt collection proceedings though the state was in fact prosecuting the matter. _See_ _Tomash v. John Deere Indus. Equipment Co._, 399 N.W.2d 387, 390 (1987).

In this case, there is even more reason to suppose that Defendants' actions constituted use of a legal process. This case does not involve complaints filed by common citizens; rather, it emanates from alleged false reports from officers of the law who are more closely related to the office of a

prosecutor than the average citizen. In addition, the legal definition of abuse of process specifically provides that it applies to the use of criminal proceedings. Since government prosecutors are the only people who can actually bring criminal proceedings and they are generally entitled to absolute immunity, police officers who file the reports underlying a prosecution but are not entitled to absolute immunity should also be subject to abuse of process claims if such claims are to have any meaning in the criminal context. Finally, the common meaning of the term "use" is "to put into action or service," and, as discussed in the Section VI of this Memorandum and Opinion Order, a reasonable jury could conclude that Defendants McCrystal and Trobaugh's actions were the proximate (or legal) cause of Plaintiffs' prosecution. *use*, Merriam-Webster, available at http://www.merriam-webster.com/dictionary/use, last visited January 28, 2012. Thus, the reports filed by Defendants McCrystal and Trobaugh were not "mere reports," they were official reports which, as previously discussed, were likely the predominant cause of the prosecution of Plaintiffs. As such, Defendants' motion for summary judgment as to Plaintiffs' abuse of process claim is denied.

46

## X.    CIVIL CONSPIRACY

The elements of a § 1983 conspiracy claim are: (1) defendant(s) "conspired with others;" (2) "that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy;" (3) the conspiracy resulted in the "deprivation" of a plaintiff's constitutional right or privilege; and (4) plaintiff(s) sustained an injury. <u>Askew v. Millerd</u>, 191 F.3d 953, 957 (8th Cir. 1999).

Iowa Courts have favorably cited Restatement (Second) of Torts § 876 for the basis of a civil conspiracy claim. <u>Wright v. Brooke Group Ltd.</u>, 652 N.W. 2d 159, 172 (Iowa 2002). § 876 provides:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Restatement (Second) of Torts § 867.

47

Taken together, Defendants' arguments against Plaintiffs' § 1983 and state law conspiracy claims are: (1) Plaintiffs have failed to show that Defendants conspired;[20] (2) Plaintiffs have failed to show either an underlying constitutional violation for purposes of § 1983 or an underlying wrongful act for purposes of state law conspiracy; (3) there is no common law conspiracy claim in Iowa; (4) Defendant Trobaugh can neither be held liable for conspiracy on Plaintiff Small's 42 U.S.C. § 1983 wrongful arrest and excessive force claims, nor Plaintiff Small's state law assault and battery claims; and (5) Defendants McCrystal and Trobaugh are entitled to qualified immunity for Plaintiffs' § 1983 conspiracy claims. Docket No. 19-3, 16-19 and Docket No. 21-3, 11, 12, and 14.

**A. Whether Defendants Have Made a Showing of Conspiracy**

At the heart of a "[c]onspiracy is . . . a combination of two or more persons to accomplish, through concerted actions, an unlawful end or a lawful end by unlawful means." <u>Tubbs v. United Cent. Bank</u>, 451 N.W.2d 177, 183-84 (Iowa 1990) (citing

---

[20] This argument could be construed as a request for a motion to dismiss; however, because Defendants' motions are entitled "motions for summary judgment," this Court has determined to construe them as such.

48

_Countryman v. Mount Pleasant Bank & Trust Co._, 357 N.W. 2d 599, 602 (Iowa 1984). "The principal element of a conspiracy is an agreement to or understanding to effect a wrong against another." _Id._ (citing _Basic Chemicals, Inc. v. Benson_, 251 N.W.2d 220, 233 (Iowa 1977).

Defendant Trobaugh contends Plaintiffs have been unable "to articulate or point to any proof that there was an agreement between" Defendants. Docket No. 21-3, 14. Likewise, Defendant McCrystal claims Plaintiffs "failed to allege any specific facts tending to show a meeting of the minds amongst the Defendants." Docket No. 19-3, 17.

As previously noted, Plaintiffs' amended complaint alleges Defendants McCrystal and Trobaugh conspired to cover up Defendant McCrystal's alleged illegal action in relation to Plaintiff Small by bringing false criminal charges and making false statements against the other Plaintiffs. Docket No. 3, 3. While Plaintiffs do not point to a signed agreement between Defendants McCrystal or Trobaugh or any other conclusive, direct evidence, they are not required to do so. Iowa Model Civil Jury Instructions provide that the agreement in a civil conspiracy "need not be expressed in words and may be implied and understood to exist from the conduct itself."

3500.2 (2004). In other words, a conspiracy "may be proved by direct or circumstantial evidence." Id. Since Defendants Trobaugh and McCrystal's reports, which are strikingly similar, are so different than other eyewitness testimony related to the events in question, it is reasonable to infer that Defendants conspired to falsify their reports. Therefore, Defendants' requests for summary judgment based on a failure to demonstrate an agreement are denied. A reasonable jury, based on the differences between eyewitness testimony and Defendants Trobaugh and McCrystal's reports, could conclude that Defendant McCrystal and Trobaugh agreed to falsify their reports in order to cover up Defendant McCrystal's action in relation to Plaintiff Small.

**B.   Whether Plaintiffs have Sufficiently Shown an Underlying Constitutional Violation for Purposes of § 1983 or a Wrongful Act for Purposes of Common Law Conspiracy**

Under Iowa Law, a "'[c]ivil conspiracy is not in itself actionable; rather, it is the" injuries caused "in furtherance of the conspiracy [that] give rise to the action.'" Wright v. Brooke Group, Ltd., 652 N.W.2d 159, 171 (Iowa 2002) (quoting Basic Chems., Inc. v. Benson, 251 N.W.2d 220, 233 (Iowa 1977). Under Federal Law, and as previously noted, a Plaintiff must

make a showing of a "deprivation" of a constitutional right or privilege.  <u>Askew v. Millerd</u>, 191 F.3d 953,  957 (8th Cir. 1999).

A constitutional deprivation may consist of a separate claim sought to be submitted to the jury.  <u>Askew v. Millerd</u>, 191 F.3d 953, 957-58 (8th Cir. 1999) (considering separate claims as a basis for a constitutional deprivation).  As previously noted, Plaintiffs have properly alleged and made a prima facie showing of both First and Fourth Amendment violations.

Furthermore, and as previously noted, a conspiracy may consist of an agreement to commit an unlawful act or a lawful act by unlawful means.  <u>Tubbs</u>, 451 N.W.2d 177, 183-84 (Iowa 1990) (citations omitted).  Again, there is testimony supporting the reasonable inference that Defendants falsified police reports and ultimately engaged in malicious prosecution, as well as abuse of process.  Malicious prosecution and abuse of process are unlawful acts, and the falsification of police reports constitutes unlawful means.

Therefore, there remains genuine issues of material fact as to whether Defendants acted in concert to violate

Plaintiffs' constitutional rights or commit a wrongful act, and summary judgment is inappropriate.

### C. Whether There is a Common Law Conspiracy Claim in Iowa

Defendant McCrystal's brief in relation to civil conspiracy consists of a long quote from the Iowa Supreme Court's decision in <u>Wright v. Brooke Group Ltd.</u>, but fails to elaborate on the import of the quoted passage. Docket No. 19-3, 18-19. At the hearing of January 30, 2012, it seemed Defendant McCrystal was arguing that there is no civil conspiracy cause of action in Iowa; in as far as this was Defendant McCrystal's intended argument, this Court disagrees.

As previously noted, the <u>Wright</u> Court stated a "'[c]ivil conspiracy is not in itself actionable; rather, it is the" injuries caused "in furtherance of the conspiracy [that] give rise to the action.'" 652 N.W.2d 159, 171 (Iowa 2002) (quoting <u>Basic Chems., Inc. v. Benson</u>, 251 N.W.2d 220, 233 (Iowa 1977)). While this may be read in isolation to imply that civil conspiracy does not exist in Iowa, this Court is persuaded that it merely requires allegations of an underlying wrongful act. Therefore, Defendant McCrystal's motion for summary judgment is denied as to this argument.

**D. Whether Defendant Trobaugh can be Held Responsible for Plaintiff Small's Claims**

Defendant Trobaugh notes that he, in fact, "made no physical contact with" Plaintiff Small. Docket No. 21-3. Though Defendant Trobaugh only raises the defense in relation to Plaintiff Small's state law assault and battery claim, if successful, it should also preclude Plaintiff Small's § 1983 wrongful arrest and excessive force claims as well.

Plaintiff Small concedes that he was not physically touched by Defendant Trobaugh; but, he asserts that, because Trobaugh was in a conspiracy to cover up Defendant McCrystal's actions, "he can be held liable" for Defendant McCrystal's actions prior to their conspiracy. Docket No. 27-19, 20. This is not the law.

As previously noted, under both Federal and Iowa law, in order for liability to attach to conspirators, there must be an agreement between "'two persons to commit *a wrong* against another.'" Wright, 652 N.W.2d at 171; see also Askew, 191 F.3d at 957. Further, the wrong must result or be committed in furtherance of the conspiracy. Id.; see also Rotermund v. U.S. Steel Corp., 474 F.2d 1139, 1145 (8th Cir. 1973) (noting that the "'gist'" of a civil conspiracy is "'the wrong done by

acts in furtherance of the conspiracy'") (internal quotations omitted).  In this case, Plaintiff Small does not allege and there is no evidence to indicate that Defendant McCrystal and Trobaugh agreed to wrongfully arrest/seize, use excessive force against, or commit an assault and battery on Plaintiff Small.  On the contrary, Plaintiff Small's allegations are that Defendant McCrystal and Trobaugh agreed to cover up Deputy McCrystal's alleged actions.  Stated differently, Deputy McCrystal's alleged actions were not in furtherance of the alleged conspiracy, but precipitated the alleged conspiracy.  Thus, Defendant Trobaugh's motion for summary judgment on Plaintiff Small's § 1983 claims for wrongful arrest and excessive use of force in violation of the Fourth Amendment and state law assault and battery claim is granted.  However, because some of the witness' testimony from the related criminal proceedings supports the reasonable inference that Deputy Trobaugh may have falsified reports for purposes of prosecuting Plaintiff Small, Deputy Trobaugh's motion for summary judgment, in as far as it relates to Plaintiff Small's § 1983 retaliatory inducement to prosecute claim, is denied.

**E.    Whether Defendants McCrystal and Trobaugh are Entitled to Qualified Immunity**[21]

As previously noted, Plaintiffs have made a sufficient showing of various constitutional violations.  Furthermore, the differences between the eyewitness' testimony and Deputies Trobaugh and McCrystal's police reports is sufficient to establish the reasonable inference that Defendants McCrystal and Trobaugh conspired to falsify their police reports and cover up Defendant McCrystal's actions in relation to Plaintiff Small.  Finally, viewing the evidence in a light most favorable to Plaintiffs, reasonable officers in circumstances identical to those faced by Defendants Trobough and McCrystal would have known their alleged agreement to submit similar false reports against Plaintiffs would violate Plaintiffs' Fourth Amendment right not to be subject to false arrest, and First Amendment right not to be subject to retaliatory prosecution.

However, this Court is persuaded that a reasonable officer in Defendant Trobaugh's position would not have known that he may be held liable for Defendant McCrystal's actions

---

[21] See pages 17-19 within this Memorandum and Opinion Order for an explanation of the standard applicable to qualified immunity.

prior to the agreement. Thus, Defendant Trobaugh's motion for summary judgment of Plaintiff Small's § 1983 wrongful arrest and excessive force claim based on qualified immunity is granted; but, because a reasonable jury could conclude Defendant Trobaugh falsified his reports, in as far as he seeks a motion for summary judgment on Plaintiff Small's retaliatory inducement to prosecute claim, his motion for summary judgment is denied.

## XI. DEFENDANT WOODBURY COUNTY'S ARGUMENT

### A. § 1983

"'[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents' on a respondeat superior theory of liability." <u>Parrish v. Ball</u>, 594 F.3d 993, 997 (8th Cir. 2010) (citing <u>Monnell v. New York Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978). However, local governments can be held liable under § 1983 for inadequate training where:

> (1) the [county's] . . . training practices [were] inadequate; (2) the [county] was deliberately indifferent to the rights of others in adopting them, such that the failure to train reflects a deliberate or conscious choice by [the county]; and (3) an alleged deficiency in the . . . training procedures actually caused the plaintiff's injury.

Id. (quotation omitted).

This standard is difficult to meet. A plaintiff must show that:

> in light of the duties assigned to specific officers . . . the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [county] can reasonably be said to have been deliberately indifferent to the need.

Id. (quoting City of Canton v. Harris, 489 U.S. 378, 390 (1989).

Plaintiff provided no information related to Woodbury County's training practices and would have this Court infer that they were inadequate based on the Defendants' conduct. Docket No. 28-1, 23. If such an inference were allowed, the limitations on local government liability would be meaningless; each case in which a reasonable jury could conclude an employee was liable would necessitate a finding that a reasonable jury could also conclude that the local government employer is also liable. In this Court's view, it is not reasonable to infer that Defendants' conduct was caused by inadequate training when nothing is known of their training. Therefore, Defendant Woodbury County's motion for summary judgment on Plaintiffs' § 1983 claims is granted.

However, Plaintiffs are granted leave to motion this Court to amend their complaint to properly allege Woodbury County's training practices, if they desire.

### B. State Law Claims

Defendant Woodbury County's only defense to the state law claims appears to be that they cannot be held liable for the claims for which Defendants Trobaugh or McCrystal are not liable. Docket No. 19-3, 23. This is correct: "in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." McCoy v. City of Monticello, 411 F.3d 920, 922 (8th Cir. 2005). Thus, in keeping with this Court's rulings within this Memorandum and Opinion Order, Defendant Woodbury County's motion for summary judgment is granted in relation to Plaintiff Small's assault and battery claim against Defendant Trobaugh, but denied in relation to all of Plaintiffs' other state law claims, including Plaintiff Small's assault and battery claim against Defendant McCrystal.

### XII. CONCLUSION

**Defendant Trobaugh's motion for summary judgment in relation to Plaintiff Small's 42 U.S.C. § 1983 causes of action for wrongful arrest, excessive use of force, and civil**

conspiracy to commit a wrongful arrest and excessive use of force are granted. Docket No. 21. Defendant Woodbury County's motion for summary judgment on Plaintiffs' 42 U.S.C. § 1983 claims based on inadequate training is granted; however, Plaintiffs are granted leave to request an opportunity to amend their complaint to allege Woodbury County's training practices. Defendants' motions for summary judgment in relation to all of Plaintiffs' other claims identified on pages 11-14 of this Memorandum and Opinion Order are denied.

**IT IS SO ORDERED** this 4th day of April, 2012.

_____
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa

## Exhibit A

| Assault on a Peace Officer | Disorderly Conduct | Unlawful Assembly | Failure to Disperse | Interference with Official Acts |
|---|---|---|---|---|
| Tracy Mertz, Michele Heck | Derrick Pomranky, Amber Gamboa, Jon Flanders, Nicholas Palmer, Adam Lee, Jason Hopkins, Clint Small | Derrick Pomranky, Amber Gamboa, Jon Flanders, Nicholas Palmer, Adam Lee, Jason Hopkins, Clint Small | Derrick Pomranky, Amber Gamboa, Jon Flanders, Nicholas Palmer, Adam Lee, Jason Hopkins, Clint Small | Clint Small |